IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JEFFREY MOORE,                          :

    Plaintiff,                          Case No. 3:24-cv-207

    v.                              :       Judge Walter H. Rice

DAYTON LAMINA CORP.,

    Defendant.                      :

---

ORDER SUSTAINING DEFENDANT DAYTON LAMINA CORP.'S
MOTION FOR SUMMARY JUDGMENT (DOC. #16); JUDGMENT
SHALL ENTER IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF
JEFFREY MOORE; TERMINATION ENTRY

---

Plaintiff Jeffrey Moore, an employee of Dayton Progress Corporation, a

wholly-owned subsidiary of Defendant Dayton Lamina Corporation, has filed suit,

alleging age discrimination and retaliation. (Compl., Doc. #1). Defendant has filed

a Motion for Summary Judgment on both claims. (Doc. #16). For the reasons set

forth below, the Motion is SUSTAINED.

I.      **Factual Background and Procedural History**

Plaintiff began working for Defendant in March 1988, working in

Defendant's processing department since 2006. (J. Moore Dep., Doc. #16-1,

PAGEID 60). On February 21, 2023, Defendant posted a job description for a

Product Manager position. (Doc. #16-3, PAGEID 70). The description stated that

all applicants had to submit their résumés to Rick Hern, Defendant's Vice

President of Sales and Marketing, "no later than Tuesday, February 28[,]" 2023.

(*Id.*). Moore was working an overnight shift for Defendant from February 28 to

March 1, 2023, and emailed his résumé to Hern at 5:52 a.m. on March 1, 2023.

(App. Email, Doc. #16-4, PAGEID 71; Pltf. Resp. to Request for Admissions, Doc.

#16-5, PAGEID 73, 74, ¶¶ 3-4, 8). Hern, who had received two résumés prior to the

deadline, did not accept résumés submitted after February 28, 2023, instead

proceeding with the two timely applicants. Hern refused to accept Plaintiff's late

application. (R. Hern Aff., Doc. #16-2, PAGEID 68, ¶ 4). Defendant hired for the

position a Jason Bunn, who was under the age of forty at the time of application.

(J. Moore Aff., Doc. #19-1, PAGEID 87, ¶ 3).

Plaintiff argues that the deadline is pretextual and illegitimate, as Hern

would not have seen Plaintiff's résumé before 8:00 a.m. on March 1, even if he

had submitted it prior to midnight on February 28; Plaintiff further asserts that he

was otherwise qualified for the position. (Memo. in Opp., Doc. #19, PAGEID 83-84,

citing Doc. #16-1, PAGEID 59, 62). Plaintiff also claims that he was not told that

the lateness of his application was the reason for his rejection until after he filed

an age discrimination charge with the Ohio Civil Rights Commission ("OCRC

Charge") on March 20, 2023. (*Id.* at PAGEID 84; OCRC Charge, Doc. #20-1, PAGEID

96).

At some point, the OCRC dismissed the charge and issued Plaintiff a "right

to sue letter." (Doc. #1, PAGEID 1, ¶ 1). Plaintiff filed suit on July 23, 2024, raising

claims of discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* (Doc. #1, PAGEID 2-3, ¶¶ 13-20). On September 5, 2025, Defendant moved for summary judgment, claiming that the tardiness of Plaintiff's application meant that he was not qualified for the Product Manager position, and, thus, could not establish a *prima facie* case of age discrimination. (Doc. #16, PAGEID 46-47, citing *Carter v. City of Troy*, 714 F. Supp. 3d 941, 951-52 (S.D. Ohio 2024)). Defendant continues that, even if Plaintiff were qualified for the position, Defendant's strict and uniform enforcement of the application deadline was a legitimate, non-discriminatory reason not to promote Plaintiff. (*Id.* at PAGEID 48). Finally, Defendant argues that Plaintiff cannot show pretext, as Hern, the sole decisionmaker on whom to hire for the Product Manager position, does not know Plaintiff, his history of applications for other positions, or his past complaints. (*Id.*, citing Doc. #16-2, PAGEID 68, ¶¶ 7-8; M. VonderBrink Aff., Doc. #16-6, PAGEID 76, ¶¶ 6-8).

Defendant asserts that Plaintiff cannot establish a *prima facie* case for retaliation, because Plaintiff was never a candidate for the position, and, thus, Defendant not hiring him could not have been an adverse action. (Doc. #16, PAGEID 49-50, citing *Hughes v. Youngstown St. Univ.*, 10th Dist. Franklin No. 20AP-73, 2021-Ohio-2079, ¶¶ 19-20 (Jun. 22, 2021), *appeal not allowed at* 165 Ohio St. 3d 1424, 2021-Ohio-3730; Doc. #1, PAGEID 3, ¶ 19; Doc. #16-5, PAGEID 73-74, ¶¶ 6-8). Moreover, there could not have been a causal connection between any previous allegations of discrimination by Plaintiff and the adverse decision of not

3

being selected for the position, as Hern was the sole decision-maker, and there is no dispute that Hern did not know Plaintiff or his prior complaints. (*Id.* at PAGEID 50-51, citing Doc. #16-2, PAGEID 68, ¶¶ 7-8; Doc. #16-6, PAGEID 76, ¶¶ 6-7). Alternatively, Defendant asserts, enforcement of the deadline was non-retaliatory and non-pretextual, as "[a]gain, Mr. Hern did not know the Plaintiff or his job history, and therefore, could only be motivated by the short timeline and the fact that the Plaintiff failed to submit his application on time." (*Id.* at PAGEID 51).

In response, Plaintiff argues that Defendant's refusal to consider his application was part of a pattern of "constantly being passed over for promotional opportunities during his career by Defendant routinely awarding these positions to employees substantially younger than Plaintiff." (Doc. #19, PAGEID 83). He claims that Defendant did not inform him of his late application being the reason he was not considered until he filed a discrimination charge with the OCRC; after that point, Plaintiff asserts, "[t]he 'late' submission then became a convenient excuse to justify Defendant['s] actions." (*Id.* at PAGEID 84, citing Doc. #19-1, PAGEID 87, ¶ 4). Plaintiff concludes that, because he was otherwise qualified for the Product Manager position, he has made a *prima facie* discrimination claim. (*Id.*). As to retaliation, Plaintiff argues that: (1) there is no evidence "that Mr. Hern made the decision to not interview Plaintiff and/or select him for the position"; and (2) VonderBrink, as "Defendant's Vice President for Human Resources[,]" knew of Plaintiff's past complaints and unsuccessful applications for promotions. (*Id.* at PAGEID 85, citing Doc. #16-6, PAGEID 76, ¶ 6).

4

In Reply, Defendant argues that the age of the applicant hired for the Product Manager position is immaterial, since Plaintiff's late application means that he was never a candidate for the position. (Doc. #20, PAGEID 90-91). As to pretext, Defendant claims that it is undisputed that Hern was the only person responsible for filling the position and has never met Plaintiff. Defendant further argues that there is no evidence, only self-serving speculation, that VonderBrink knew of Plaintiff's past complaints and, if he did, that he ever communicated such information to Hern. (*Id.* at PAGEID 91-92). Defendant also asserts that, contrary to Plaintiff's statement, Hern expressly informed Plaintiff *prior to* filing his OCRC Charge that the tardiness of his application was the reason for his application not being considered. (*Id.* at PAGEID 93-94, quoting Email Corr., Doc. #20-1, PAGEID 97-98). Thus, Defendant concludes, there is no causal link between any protected activity and the adverse action, meaning Plaintiff has not set forth a *prima facie* case for retaliation.

The matter is now ripe for decision.

## II. Legal Standard

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings," and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the

6

evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2726 (3d ed. 1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. FED.R.CIV.P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). If it so chooses, however, the court may also consider other properly presented materials in the record. FED.R.CIV.P. 56(c)(3).

## B. Age Discrimination

Age discrimination claims under the ADEA follow the well-established "burden-shifting" framework. *Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("we have long found the *McDonnell Douglas* framework useful in analyzing circumstantial evidence of ADEA claims. The *McDonnell Douglas* test thus remains the applicable law in this circuit[.]"). In the first phase, Plaintiff must establish a *prima facie* case "by showing that (1) he is a member of a protected group, (2) he was qualified for the position in question, (3) his employer took an adverse employment action against him, and (4) there are circumstances that

7

support an inference of discrimination." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 808 (6th Cir. 2020) (internal quotation marks and citation omitted). Plaintiff meets that *prima facie* burden if he "raise[s] a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons for the employer's treatment of the plaintiff[,]" *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000). (internal quotation marks, citation, and brackets omitted), "such as the plaintiff is unqualified for the position or not a member of the protected group." *Willard*, 952 F.3d at 808.

If a Plaintiff meets this burden, then Defendant must proffer a legitimate, nondiscriminatory reason for taking the adverse action. *Willard*, 952 F.3d at 810. If Defendant does so, then the burden shifts back to Plaintiff to show that the proffered reason was a pretext for discrimination. "An employee may show that an employer's proffered reason . . . was pretext by demonstrating that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id*. (internal quotation marks and citations omitted). Nonetheless, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### C.    Retaliation

ADEA retaliation claims follow a similar burden-shifting framework:

8

> To establish a *prima facie* case of retaliation under either federal or
> Ohio law, a plaintiff must show that (1) she engaged in a protected
> activity, (2) the defending party was aware that the plaintiff had
> engaged in that activity, (3) the defending party took an adverse
> employment action against the employee, and (4) there is a causal
> connection between the protected activity and the adverse action.

*Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (brackets, internal

quotation marks, and citation omitted). The second and third steps are identical to

those in a discrimination claim. *Id.*

## III. Analysis

### A. Claim One: ADEA Discrimination

Defendant argues that Plaintiff, while a member of the protected class,

cannot meet the second and third *prima facie* elements. Defendant claims that

Plaintiff's late submission both made him unqualified for the position and meant

that he never actually applied for the job, and thus, never suffered an adverse

action. (Doc. #16, PAGEID 47-48, citing *Hammond v. Sysco Corp.*, No. 23-5385,

2023 WL 8847365 (6th Cir. Dec. 21, 2023); *Hughes*, 2021-Ohio-2079, ¶¶ 18-19).

Defendant is correct that *Hughes*, where the Tenth District Court of Appeals

rejected both plaintiff's federal and state employment law claims, 2021-Ohio-2079,

¶ 2, is directly on point. The *Hughes* court held as a matter of law that, because

the plaintiff did not apply before the deadline, defendant not hiring him for the

position could not have been an adverse employment action. *Id.* at ¶ 20.

Similarly here, Defendant clearly stated an application deadline in the job posting

and enforced that deadline as to all applicants, regardless of age. (Doc. #16-2,

PAGEID 68, ¶¶ 3-6; Doc. #16-3, PAGEID 70). That Plaintiff applied less than six hours late, rather than thirteen days late as in *Hughes*, is of no import, and Plaintiff cites no caselaw suggesting that Defendant could not strictly enforce its deadline. Moreover, and contrary to Plaintiff's argument (Doc. #19, PAGEID 84, citing Doc. #19-1, PAGEID 87, ¶ 4), Plaintiff conceded in his Complaint that Hern told Plaintiff *two days prior to filing* his OCRC Charge that Plaintiff's untimely submission prevented him from being considered for the position. (Doc. #1, PAGEID 2, ¶ 11). Thus, by Plaintiff's own allegation, Defendant's enforcement of its application deadline could not have been a *post hoc* rationalization in light of Plaintiff's protected activity.

The Court is mindful that Plaintiff's *prima facie* burden in a discrimination case is modest. *Cline*, 206 F.3d at 660. However, Defendant setting forth a clear deadline, Plaintiff applying late, and Defendant uniformly applying that deadline across all job seekers means that Plaintiff never applied for the Product Manager position. Thus, as a matter of law, Plaintiff not being selected for the position could not have been an adverse action. Moreover, the successful candidate applied prior to the deadline (Doc. #16-6, PAGEID 76, ¶ 9), meaning that he is not a valid comparator. *See Ayers-Jennings v. Fred's, Inc.*, 461 F. App'x 472, 476 (6th Cir. 2012) citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352-53 (6th Cir. 1998) ("To support an inference of unlawful discrimination, comparable non-[protected class] employees who received more favorable treatment than plaintiff must be shown to be similarly situated in all relevant respects."). As

10

Plaintiff fails to identify any other adverse employment action or comparator, he has shown no circumstances supporting an inference of discrimination, and Defendant's Motion must be sustained as to Claim One.

Even if Plaintiff had made a *prima facie* case, Defendant easily meets its burden at stage two of the *McDonnell Douglas* analysis—its actual and uniform enforcement of its application deadline was a legitimate, nondiscriminatory reason for the purported adverse action of not hiring Plaintiff. Thus, the burden would shift back to Plaintiff to show evidence that this proffered reason was mere pretext for Defendant's age-discriminatory intent. *Willard*, 952 F.3d at 807. Plaintiff has designated no such evidence. The job posting, Hern's affidavit, and the email correspondence between Hern and Plaintiff show overwhelmingly that Defendant's proffered reason was based in fact and actually motivated Defendant. As discussed above, it is undisputed that Hern was the sole decisionmaker, and that he did not know Plaintiff, his interest in the position, or his past protected activity. (Doc. #16-2, PAGEID 68, ¶¶ 6-8; Doc. #16-6, PAGEID 76, ¶¶ 6-7). While Plaintiff claims that VonderBrink was aware of Plaintiff's past applications (Doc. #19, PAGEID 85, citing Doc. #16-6, PAGEID 76, ¶ 4), there is no evidence that VonderBrink and Hern ever spoke about Plaintiff, much less about any past applications (which Plaintiff never specifies). Finally, Plaintiff's protestations of "form over substance" (Doc. #19, PAGEID 83), are unsupported, and he cites no caselaw suggesting that a late application would be insufficient motivation for not

11

hiring someone for a position. Consequently, Plaintiff has failed to demonstrate pretext, and Defendant is entitled to summary judgment for that reason as well.

**B. Claim Two: Retaliation**

In his Complaint, Plaintiff alleges that he "has filed several complaints of age discrimination for not being selected for promotional opportunities[,]" (Doc. #1, PAGEID 3, ¶ 18), and that, "as a result of Plaintiff's protected activity, Defendant retaliated against Plaintiff by not selecting him for the promotional opportunity, which is the subject matter of this action[.]" (*Id.* at ¶ 19). At no point does Plaintiff specify: what promotional opportunities he applied for; when he applied for them; why he was purportedly denied; what complaints of age discrimination he made; or when, where, and to whom he made them. Absent such information, the Court cannot consider any such complaints as protected activity. Moreover, Plaintiff's OCRC Charge cannot be considered protected activity for the purposes of this suit, since the Charge was not filed until March 20, 2023, almost three weeks after the alleged adverse action of not being hired for the Product Manager position. (Doc. #20-1, PAGEID 96). As there is no evidence before the Court of any protected activity by Plaintiff—much less any connection between said activity and an adverse action by Defendant—Plaintiff has failed to set forth a *prima facie* case for retaliation.

Alternatively, and as with Claim One, even if Plaintiff had set forth a *prima facie* retaliation case, Defendant's enforcement of its application deadline is a legitimate, non-retaliatory reason for the adverse action, and Plaintiff cannot meet

his burden to show pretext for retaliation. Thus, Defendant is also entitled to summary judgment based on Plaintiff's failure to show pretext.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. #16) is SUSTAINED. Judgment shall enter in favor of Defendant and against Plaintiff.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

IT IS SO ORDERED.

November 6, 2025

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT